**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Christopher T. Parmelee,

Plaintiff,

v.

City of Bloomington, William Grabosky, Brian H. Gaviglia, and Thomas J. Erickson,

Defendants.

Civil No. 01-1020 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Timothy F. Gilboe,

Plaintiff,

v.

City of Bloomington and William Grabosky,

Defendants.

Civil No. 01-1021 (DWF/AJB)

---

Ronald I. Meshbesher, Esq., and Jonathan M. Peck, Esq., Meshbesher & Spence, Ltd., 1616 Park Avenue, Minneapolis, Minnesota 55404, counsel for Plaintiffs.

Jon K. Iverson, Esq., Paul D. Reuvers, Esq., and Kafi E. Cohn, Esq., Iverson Reuvers, LLC, 230 Townline Office Plaza, 8585 West 78th Street, Bloomington, Minnesota 55438, counsel for Defendants.

---

## INTRODUCTION

The above-entitled matters are before the undersigned United States District Judge pursuant to Defendants' Motion for Summary Judgment. In their respective Complaints,

SEP 12 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD SEP 12 2002
DEPUTY CLERK

Plaintiffs Christopher Parmelee and Timothy Gilboe allege that they were the victims of false arrest and unlawful detention in violation of 42 U.S.C. § 1983. Plaintiffs also allege state law claims of false arrest, false imprisonment, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress. Further, Plaintiff Parmelee alleges that he was maliciously prosecuted by Officer Thomas Erickson, Prosecutor Brian Gaviglio,[1] and the City of Bloomington. For the reasons set forth below, Defendants' motion is granted as to all Defendants in both actions.

**Background**

On May 12, 1999, Plaintiff Christopher Parmelee ("Parmelee") contacted the City of Bloomington Police Department and informed the main switchboard that within approximately 15 minutes, "Blitz Creek Productions" would be filming a bank robbery scene at "the old Norwest [Bank] Building" at 7700 West Old Shakopee Road in Bloomington. Unbeknownst to the police at that time, Parmelee was actually making a short film for his video production course at Minneapolis Community and Technical College with his cousin and fellow student, Timothy Gilboe ("Gilboe"). The plot of the film centered around two young misfits and a bungled bank robbery.

During the phone call, the Dispatcher consulted with the on-duty desk sergeant. Inferring that the bank was closed, the desk sergeant instructed the Dispatcher to tell Parmelee that if the police received any calls regarding this "fake" bank robbery, the police would dispatch a unit to the bank's address. Soon after the phone call took place, however, the desk sergeant learned that

---

[1] The Complaint names Defendant "Brian H. Gaviglia" but subsequent pleadings from Plaintiff and Defendants name "Brian Gaviglio." The Court assumes that "Gaviglio" is the proper spelling.

the Norwest Bank on Old Shakopee Road was actually open for business. The desk sergeant contacted Norwest Bank officials, who stated that they were unaware of a staged bank robbery, and that they had neither heard of nor consented to any such filming. At that time, the desk sergeant grew suspicious that the alleged fake bank robbery was a ruse, and ordered the Bloomington Police Department to send an officer to the scene to investigate.

The police department dispatched Officer William Grabosky ("Officer Grabosky") to the scene. At the scene, Officer Grabosky observed Parmelee and Gilboe approach the bank. A camera was set up inside of Parmelee's vehicle, but it is disputed as to whether the officer could see the camera from his vantage point. As the two plaintiffs approached the bank, Officer Grabosky watched Parmelee remove what appeared to be a .45 caliber semiautomatic handgun[2] from a duffle bag. At that time, Officer Grabosky ordered Parmelee and Gilboe to drop the weapon and to move away from the entrance to the building.

Once Officer Grabosky's backup arrived, Parmelee and Gilboe were held and brought to the Bloomington Police Department for questioning. Parmelee and Gilboe were detained for several hours and then released. Plaintiffs allege that they were not allowed to make a phone call during their detention and that after being released they were forced to walk several miles to remove their cars from the impound lot.

Approximately two weeks later, Parmelee was charged with a gross misdemeanor of brandishing a replica firearm or BB gun and with a gross misdemeanor of carrying a rifle, shotgun, or BB gun in public.[3] The district court found probable cause to submit to the jury the

---

[2] The gun was actually a .45 caliber replica BB gun.

[3] Plaintiffs allege that Parmelee was charged only because he failed to agree to a (continued...)

charge of carrying a rifle, shotgun, or BB gun in public, but dismissed the charge of brandishing a replica firearm or BB gun. Following a jury trial, Parmelee was acquitted. No charges were filed against Gilboe.

Plaintiffs allege that the Bloomington Police Department based their determination of probable cause on an erroneous Criminal Complaint, signed by Officer Thomas J. Erickson and Associate City Attorney Brian Gaviglio. Specifically, Plaintiffs point to the following misstatements:

1. The Criminal Complaint stated that when Parmelee called the Bloomington Police Department, he identified himself only as "Chris." Mr. Parmelee actually identified himself by his full name.

2. The Criminal Complaint stated that when Officer Grabosky arrived at the Norwest Bank Building, there were two vehicles parked in front of the bank entrance with their engines running. In fact, neither of Plaintiffs' vehicles was running.

3. The Criminal Complaint stated that Plaintiffs approached the bank just as a Brinks security truck drove up to the bank entrance. The Brinks truck actually drove up after Officer Grabosky had asked Plaintiffs to drop the weapon and move away from the entrance.

4. The Criminal Complaint alleged that the Plaintiffs approached the bank doors, when, in fact, they had approached the strip mall doors that led to the bank entrance.

---

[3](...continued)
plea bargain; namely, that the City would dismiss all charges against him in exchange for his agreement not to bring a civil rights action against the City and its officers. While such release-dismissal agreements are not *per se* unenforceable (*Town of Newton v. Rumery*, 480 U.S. 386, 107 S. Ct. 1187, 94 L. Ed. 2d 405 (1987)), the Court finds that they are dubious, at best. *See, e.g., Cain v. Darby Borough*, 7 F. 3d 377 (3rd Cir. 1993), *cert. denied*, 510 U.S. 1195, 114 S. Ct. 1303, 127 L. Ed. 2d 655 (1994); *Kinney v. City of Cleveland*, 144 F. Supp. 2d 908 (N.D. Ohio 2001). The ABA Standards for Criminal Justice state that a prosecutor should not engage in such conditional agreements unless the accused has agreed "knowingly and intelligently, freely and voluntarily, and where such waiver is approved by the court." *ABA Standards for Criminal Justice*, Standard 3-3.9(g) (3d ed. 1993).

5. The Criminal Complaint stated that Plaintiffs' video camera was concealed in the trunk of their car. The video camera was actually inside the passenger compartment of Parmelee's vehicle.

6. The Criminal Complaint stated that upon arrival at the Bloomington Police Department, Plaintiffs admitted that they had never provided information as to their identity. The transcript of Parmelee's phone conversation with the Bloomington Police Department, however, demonstrates that Parmelee did indeed provide his full name to the dispatcher.

Based upon these misstatements, Plaintiffs have alleged that they were improperly detained, arrested, and charged by the Bloomington Police Department, its officers, and the City of Bloomington Associate City Attorney, Brian Gaviglio. Plaintiffs' claims include false arrest and false imprisonment in violation of 42 U.S.C. § 1983 and state law tort claims of false arrest, false imprisonment, assault, negligent infliction of emotional distress, and intentional infliction of emotional distress. Furthermore, Parmelee alleges that the City of Bloomington and its Associate Attorney engaged in malicious prosecution against him. Defendants' Motion for Summary Judgment alleges that Plaintiffs' claims are precluded by the state court's determination of collateral estoppel and by qualified, official, and prosecutorial immunity.

**Discussion**

**1. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and

inexpensive determination of every action.'" Fed. R. Civ. P. 1; *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Probable Cause**

Defendants assert that because the issue of probable cause has been already determined against Plaintiffs during the course of the previous state court action, and because a determination of probable cause would invalidate Plaintiffs' claims, summary judgment is appropriate on all of the claims. Plaintiffs contend that the state court's preliminary determination of probable cause has no collateral estoppel effect on this Court or on this action. Plaintiffs further assert that their arrest and detention were based upon erroneous information provided in the criminal complaint. Thus, Plaintiffs assert that probable cause was lacking and that summary judgment on their claims is inappropriate.

The Court need not address the Defendants' contention that the state court's preliminary determination of probable cause has a collateral estoppel effect on Plaintiffs' claims because the Court determines now that, at the time of Plaintiffs' arrest, the Bloomington Police Department had probable cause to believe that Plaintiffs were attempting to commit a bank robbery. "Probable cause exists if the facts and circumstances within the arresting officer's knowledge

were sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense." *United States v. Magness*, 69 F.3d 872, 874 (8th Cir. 1995). In his phone call to the Bloomington Police Department, purportedly giving 15 minutes' notice of the staged bank robbery, Parmelee implied that the Norwest Bank was closed. The desk sergeant, upon determining that the bank was indeed open, suspected that Parmelee's call was a ruse and dispatched a squad car to the scene. When Officer Grabosky arrived, he saw Parmelee and Gilboe approach the bank building with what appeared to be a .45 caliber handgun. At that time, Officer Grabosky ordered Plaintiffs to drop the weapon and to move away from the building. Clearly, Officer Grabosky had reason to believe that Plaintiffs were either attempting a bank robbery or, at least, illegally carrying a gun in public, a crime for which Parmelee was later charged.

Furthermore, the Court finds that there was no actionable misconduct on the part of the City of Bloomington or its officers in detaining Plaintiffs. The police merely detained Parmelee and Gilboe in order to question them and to determine what had occurred. Once the facts were determined, Plaintiffs were not charged with attempted robbery, but rather Parmelee was later charged with carrying a BB gun in public. Parmelee admittedly was carrying the BB gun.[4]

**3. 42 U.S.C. § 1983 Claim**

Plaintiffs allege that the City of Bloomington officers, acting under color of State law, falsely arrested and detained Plaintiffs in violation of 42 U.S.C. § 1983 and the rights secured by

---

[4] The trial court jury acquitted Parmelee, apparently based upon the police's alleged consent to Parmelee's carrying of the handgun. The Court is mystified by the notion that a City could be legally entitled to consent to such behavior, without any notice whatsoever to the businesses and neighboring entities involved. The Court notes that such consent, if lawful, would put the Police Department at a high risk of exposure to anyone who was hurt as a result of the "fake" bank robbers behavior.

the Fourth and Fourteenth Amendments of the United States Constitution. Section 1983 prohibits a person acting under color of state law from depriving another person of his or her "rights, privileges, or immunities secured by the Constitution and laws . . . ." Clearly, the City of Bloomington officers were acting under color of state law when they arrested and detained Plaintiffs.

Qualified immunity shields Defendants from suit under §1983 if Defendants reasonably believed that their conduct was lawful "in light of clearly established law and the information possessed" by the Defendants at the time of the incident. *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3037, 97 L. Ed. 2d 523 (1987)). On a motion for summary judgment, the Court employs a three-part test to determine whether qualified immunity exists. First, the plaintiff must assert a violation of a constitutional right. Second, the alleged right must be clearly established. Third, taking the facts in the light most favorable to the plaintiff, "there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated that right." *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999). For purposes of qualified immunity, the inquiry as to both Plaintiffs' false arrest and unlawful detention claims focuses on whether a reasonable officer knew or should have known that there was no probable cause to arrest and detain Plaintiffs. Because Plaintiffs have failed to establish that they were arrested and detained without probable cause, the Court finds that summary judgment on these claims is appropriate.

**4. False Arrest and False Imprisonment**

In order to establish a claim for false arrest, the Plaintiffs must prove that they were arrested and that the arrest was unlawful. *Lundeen v. Renteria*, 224 N.W.2d 132, 135 (Minn.

1974). The common law regarding false imprisonment states that an individual may not, without legal justification, be confined against her or his will. *Gleason v. Metropolitan Council Transit Operations,* 563 N.W.2d 309, 319 (Minn. Ct. App. 1997); *see also Kleidon v. Glascock,* 215 Minn. 417, 425, 10 N.W.2d 394, 397 (1943) (false imprisonment is any imprisonment that is not legally justifiable). Under Minnesota law, public officials are automatically entitled to official immunity from state law claims such as false arrest and false imprisonment when their duties require the exercise of discretion, so long as the officer is not guilty of a willful or malicious wrong. *Johnson v. Morris*, 453 N.W.2d 31, 41-42 (Minn. 1990); *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn. 1988).

Here, Plaintiffs' claims fail in two regards. First, Plaintiffs have failed to establish that probable cause or legal justification was lacking at the time of their arrest and detention. Second, Plaintiffs have failed to demonstrate that Defendants acted outside the scope of their discretionary duties and thus were not entitled to official immunity. Therefore, the Defendants are entitled to official immunity and summary judgment on these claims is appropriate.

**5. Assault**

Plaintiffs claim that Officer Grabosky assaulted them by pointing his weapon at them with the intent to cause fear or apprehension of imminent harmful or offensive bodily contact. Minnesota Statutes § 609.06 provides that reasonable force is authorized "[w]hen used by a public officer . . . [i]n effectuating a lawful arrest . . . ." Probable cause existed to believe that a bank robbery may have been in progress at the time Officer Grabosky witnessed the Plaintiffs near the building entrance. The officer had reason to believe that Plaintiffs were dangerous or might have been in progress of committing a crime. At a minimum, Parmelee was carrying what the Officer reasonably believed to be a dangerous weapon. Officer Grabosky's use of his gun

was reasonable until backup arrived, because the officer's safety and the safety of the public warranted reasonable force. Thus, summary judgment is appropriate on Plaintiffs' assault claim.

**6. Emotional Distress**

Plaintiffs allege that Officer Grabosky intentionally and/or negligently pointed a weapon at them without cause, and that this "extreme and outrageous conduct" caused them severe emotional distress. Plaintiffs further contend that their alleged false arrest and false imprisonment resulted in severe emotional distress. The Court finds that Plaintiffs have not demonstrated a *prima facie* case for either of their emotional distress claims.

To establish a claim for intentional infliction of emotional distress: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983) (citing *Restatement (Second) of Torts* § 46(1) (1965)). Plaintiffs have not demonstrated that Defendants' behavior was "extreme and outrageous." "Extreme and outrageous" conduct is that which is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Hubbard*, 330 N.W.2d at 439. The Court finds that an arrest, based upon probable cause and accompanied by the necessary force to detain armed suspects, does not justify classification as "extreme and outrageous." Plaintiffs have failed to demonstrate a *prima facie* case of intentional infliction of emotional distress, and summary judgment is appropriate.

Minnesota recognizes a claim for negligent infliction of emotional distress for "a person within the zone of danger of physical impact who reasonably fears for his or her own safety and who consequently suffers severe emotional distress with resultant physical injury." *Stadler v. Cross*, 295 N.W.2d 552, 553 (Minn. 1980). Plaintiffs' have neither pleaded nor established any

claims of physical injury resultant from the Defendants' behavior. Thus, summary judgment on Plaintiffs' negligent infliction of emotional distress claim is appropriate.[5]

**7. Malicious Prosecution**

Finally, Plaintiff Parmelee contends that the Officer Thomas J. Erickson and Associate City Attorney Brian Gaviglio maliciously brought the "carrying of a Replica BB gun" charge against him. To establish a claim of malicious prosecution, the claimant must establish three elements: "(1) the suit must be brought without probable cause and with no reasonable ground on which to base a belief that the plaintiff would ultimately prevail on the merits; (2) the suit must be instituted and prosecuted with malicious intent; and (3) the suit must ultimately terminate in favor of the defendant." *First Nat'l Bank of Omaha v. Marquette Nat'l Bank of Minneapolis*, 482 F. Supp. 514, 522-23 (D. Minn. 1979); *Stead-Bowers v. Langley*, 636 N.W.2d 334, 339 (Minn. Ct. App. 2001). The Court finds that probable cause existed to charge Parmelee with a gross misdemeanor of carrying a Replica BB gun. The Court need not go further in its analysis because Parmelee has not established lack of probable cause, an essential element of his malicious prosecution claim. As noted in footnote 3, however, the Court does not condone the practice of threatening criminal prosecution in an attempt to deter civil rights lawsuits.

**Conclusion**

Although the Court is dismissing all claims, the Court fully realizes that the Plaintiffs have a decision to make with respect to taking an appeal of this Court's decision. As the Court noted off the bench during the motion hearing in this matter on August 23, 2002, the Court is

---

[5] The Court further notes that the emotional distress claims, if allowed, would subject any officer to tort liability who, incident to a lawful arrest, pointed a gun at an armed suspect. The Court cannot justify such an absurd result.

genuinely perplexed, if not dismayed, by the procedural history of this case. Two college students, without adequate preparation and with essentially no notice to anyone, decided to make a short film of a fake bank robbery. The area had not been roped off, the bank was open for business, and Plaintiffs had informed no one, other than a last-minute call to the City of Bloomington Police Department. With or without consent of the Bloomington Police Department, and aside from the matter of whether the Police Department would have the authority to give such consent, the Plaintiffs knew that neither the bank nor any of the surrounding businesses was notified that Plaintiffs were filming a fake robbery. All parties are fortunate that no one was hurt.

The City of Bloomington Police Department should accept responsibility for their failure to unequivocally say, "Do not do this," or "Whether we can give consent or not, this needs to be planned, notice must be given to all parties, and an area must be roped off." That plainly was not done. Then, rather than getting all of the parties together to discuss how this happened and why it should never happen again, the prosecuting attorney brought criminal charges, but offered to dismiss the criminal charges if Plaintiffs agreed not to bring a civil action. The litigation train had left the tracks, however, and the parties spent their money and the taxpayers' money trying a three-day criminal jury case in Hennepin County.

Each party should accept the responsibility for the errors in judgment that they made, even if such errors did not result in actionable behavior. To the extent that the parties would like to bring this matter to a close and resolve it in the interests of justice, the Court is willing to offer the services of a Magistrate Judge to assist in post-dismissal negotiations. Ultimately, that decision will have to be made first by the Plaintiffs, given the issue of appeal.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. Nos. 9 and 10) is **GRANTED** as to all Defendants.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 12, 2002

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*